UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 1:26-cv-21046-DSL

KATHERINE RHOADES,
Plaintiff,
v.
OCEANIA CRUISES LTD., a Bermuda Company,
d/b/a OCEANIA CRUISES,
Defendant.
_______________________________________________/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT [D.E. 30]**

Plaintiff, KATHERINE RHOADES, responds in opposition to Defendant OCEANIA CRUISES LTD.'s Motion to Dismiss Plaintiff's Second Amended Complaint [D.E. 30] (the "Motion"), and states:

## I. Introduction

In dismissing the First Amended Complaint, this Court identified the allegations that were missing: "Plaintiff might have alleged that Oceania conducted an audit on such-and-such a date (or perhaps even that it *must have* conducted such an audit at some point) and that an audit would have revealed the risk-creating condition." [D.E. 23 at 7–8]. The Court added that, while it did not hold such allegations sufficient, "[t]hey might, however, get the ball rolling." [D.E. 23 at 8 n.5].

The Second Amended Complaint pleads precisely those allegations. It alleges that, in onboarding Geo. F. Huggins & Co. (G'da) Ltd. ("Huggins") and approving Tour GND-005 for sale to Oceania passengers for the 2024–2025 season, Oceania conducted — or, pursuant to its own mandatory vetting, audit, and in-person review program, must have conducted — pre-approval vetting and at least one audit, in-person review, or site inspection of the tour before

February 24, 2025 [D.E. 27 ¶ 62], and that any such review following the tour route as Oceania sold it would have revealed the risk-creating condition [D.E. 27 ¶ 63]. The pleading then goes further than the Court's roadmap required. It alleges that the condition was fixed and long-standing — a steep blacktop access driveway of fixed grade, strewn with gravel shed continuously by the deteriorating surface for months or years and present on every departure [D.E. 27 ¶¶ 48, 60]; that Oceania's safety commitments were implemented as binding contract terms, with mandatory operational manuals, insurance vetting, audit rights, and at-will termination [D.E. 27 ¶¶ 30–45]; that Oceania had direct operational contact with this excursion after every departure, all season [D.E. 27 ¶ 64]; that the site's disrepair was publicly reported years earlier [D.E. 27 ¶ 65]; and that the operator itself knew the descent was dangerous, maintaining a standing practice of driving its vans to the upper loading area precisely so that guests never walk down the hill — a practice its own guide-driver, minutes after Plaintiff's fall, admitted he should have followed and always follows [D.E. 27 ¶¶ 52, 56, 58].

The Motion quotes this Court's Order but never engages the passage that matters. Its lead notice authorities are shipboard transitory-substance cases. Its disclaimer arguments rest on documents outside the pleading and on decisions rendered at summary judgment. The Motion should be denied. Materials already of record are cited herein by docket entry and are not re-attached.

## II. Legal standard

To survive dismissal, a complaint need only plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard "calls for enough fact to raise a reasonable expectation that discovery will reveal

evidence" of the defendant's liability. *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (quoting *Twombly*, 550 U.S. at 556). The Court accepts the well-pleaded allegations as true and draws every reasonable inference in Plaintiff's favor. *Iqbal*, 556 U.S. at 678; [D.E. 23 at 3]. It does not weigh evidence, resolve disputed readings of documents, or decide the merits.

## III. The Second Amended Complaint plausibly alleges notice

Under the general maritime law, a carrier owes its passengers "reasonable care under the circumstances of each case," *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 632 (1959), which requires "actual or constructive notice of the risk-creating condition," *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989); [D.E. 23 at 6]. The Second Amended Complaint pleads notice three independent ways.

### A. Plaintiff pleaded the allegations this Court identified — anchored in contract, not conclusion

Paragraphs 62 and 63 track the Court's Order nearly word for word: an audit "must have" been conducted before February 24, 2025, and an audit "would have revealed the risk-creating condition." *Compare* [D.E. 23 at 7–8 & n.5], *with* [D.E. 27 ¶¶ 62–63]. The Motion's principal objection is that paragraph 62 is pleaded "on information and belief." [D.E. 30 at 6–7]. But the belief is not naked; it rests on pleaded, contract-based facts. The Standard Shore Excursion Agreement obligated Huggins to comply with the cruise organization's own Tour Operator Procedures and Policies Manual and Ground Handling Guidelines (TOA § 3), submitted the tour into the corporate onboarding portal (§ 5), imposed insurance vetting to the cruise line's specifications (§ 13), reserved audit and inspection rights (§ 17), and reserved termination at will (§ 16(a)(v)). [D.E. 27 ¶¶ 30–41, 45].

Oceania administered that program from Miami through its shoreside organization, its corporate web portal, and its vessel's Shore Excursion/Destination Manager. [D.E. 27 ¶ 45]. When a pleading alleges a mandatory program in those concrete terms, the date and findings of its application to the tour being onboarded lie uniquely in the defendant's records — exactly the showing the plausibility standard reserves for discovery. *Chaparro*, 693 F.3d at 1337.

Courts in this district apply the same rule to shore-excursion inspection programs: "[w]here a plaintiff alleges that a cruise line has an inspection process for excursion operators that should have revealed the defects alleged in the complaint, but in fact did not, that is typically sufficient to demonstrate that a defendant should have knowledge of the alleged defects, at least at the motion to dismiss stage." *Blow v. Carnival Corp.*, 674 F. Supp. 3d 1239, 1251 (S.D. Fla. 2023); *accord Healy v. NCL (Bahamas) Ltd.*, 733 F. Supp. 3d 1227, 1232–34 (S.D. Fla. 2024) (denying dismissal where the line maintained a Miami-headquarters department "devoted to … supervising, auditing, and monitoring shore excursions" and inspected the subject tour; collecting cases finding "nearly identical allegations sufficient to satisfy the notice requirement at the motion to dismiss stage"); *Kennedy v. Carnival Corp.*, 385 F. Supp. 3d 1302, 1331 (S.D. Fla. 2019) ("Plaintiff's allegation that Defendant should have been aware of the risk-creating condition during inspections of the excursion is sufficient to provide actual or constructive notice of the risk-creating condition."); *Heller v. Carnival Corp.*, 191 F. Supp. 3d 1352, 1358 (S.D. Fla. 2016). The prior Order faulted the First Amended Complaint for alleging only that Oceania "represents" it has safety tools, without applying any of it to this excursion or this condition. [D.E. 23 at 7]. The Second Amended Complaint applies the program to this operator, this tour, this route, and this condition. [D.E. 27 ¶¶ 62–63, 81].

### B. The condition was fixed and permanent; the Motion's authorities address transitory substances

The Motion leans on *Newbauer* and *Holland*. Both involved shipboard spills. *Newbauer v. Carnival Corp.*, 26 F.4th 931, 933 (11th Cir. 2022) (passenger "slipped on a liquid or wet, slippery transitory substance" on the ship's Lido Deck); *Holland v. Carnival Corp.*, 50 F.4th 1088, 1096 (11th Cir. 2022) (transient wet substance on a shipboard staircase). For a spill, duration or prior similar incidents answer the question the facts pose: how long the substance was there, and whether the carrier had reason to know of it. A steep vehicle driveway of fixed grade, shedding gravel from a deteriorating blacktop surface "continuously for months or years" and present "on every prior GND-005 departure," poses no such question. [D.E. 27 ¶ 60]. Duration is pleaded. So is exposure: the operator's personnel drove and walked the driveway on every departure, and any inspection tracing the tour route would encounter it. [D.E. 27 ¶¶ 59, 63].

The Eleventh Circuit has also rejected the Motion's attempt to shrink the "risk-creating condition" to the particular gravel underfoot. In *Brady v. Carnival Corp.*, the district court framed the condition as the particular puddle; the Eleventh Circuit corrected it: "the salient issue is whether Carnival knew, more generally, that the area of the deck where Brady fell had a reasonable tendency to become slippery—and thus dangerous to passengers—due to wetness from the pool." 33 F.4th 1278, 1281 (11th Cir. 2022). Properly framed, the condition is the area together with its recurring source. The pleaded condition here is the steep, gravel-strewn access driveway and the tour's dependence on staging vehicles at the level upper loading area — a designed feature of an excursion Oceania authored, priced, and sold, not a stray hazard. [D.E. 27 ¶¶ 28, 48, 58, 61, 63].

The Motion's remaining authorities fail at the same threshold. *Mellnitz* is a hearing transcript from another case, and its reasoning helps Plaintiff: the court there asked for allegations that, in testing the excursion, the carrier "knew and experienced" the condition. [D.E. 30 at 6]. Paragraph 63 pleads exactly that, for a condition present on every departure, in all conditions. *Polanco*, *Aronson*, *Ryan*, and *Bollinger*, as the Motion describes them [D.E. 30 at 6, 8–9], involved no pleaded, contractually mandated inspection program applied to a fixed physical condition; each faulted a complaint for supplying no mechanism by which the carrier would have learned of the danger. The mechanism here is pleaded by contract section.

**C. Huggins' actual knowledge is pleaded — and it counts twice**

For the vicarious counts, the operative knowledge is Huggins'. *See Rojas v. Carnival Corp.*, 93 F. Supp. 3d 1305, 1311 (S.D. Fla. 2015); [D.E. 23 at 10]. The First Amended Complaint failed on that point without briefing. [D.E. 23 at 10]. The Second Amended Complaint pleads it directly: Huggins' personnel traversed the driveway on every departure; the condition was permanent; and Huggins maintained a standing practice of bringing the vans to the level upper area while guests rested, precisely so that guests never walk down the hill — a practice pleaded to have been adopted because Huggins knew the descent on foot was dangerous. [D.E. 27 ¶¶ 52, 58–60]. The guide-driver's statements minutes after the fall — that he always brings the vans to the top and knew he should have — are pleaded as evidence of that pre-existing practice, not as hindsight. [D.E. 27 ¶ 56]. The Motion's contrary reading [D.E. 30 at 15] draws the inference against the pleader, which Rule 12(b)(6) forbids. Huggins' knowledge also feeds Oceania's constructive notice: a single observed departure, or a single interview of the operating personnel, would have surfaced the practice and its reason. [D.E. 27 ¶ 63].

### D. Count II pleads negligent selection and retention

A carrier "may be liable for negligently hiring or retaining a contractor." *Smolnikar v. Royal Caribbean Cruises, Ltd.*, 787 F. Supp. 2d 1308, 1318 (S.D. Fla. 2011); *accord Barham v. Royal Caribbean Cruises Ltd.*, 556 F. Supp. 3d 1318, 1327 (S.D. Fla. 2021) (stating the elements and sustaining such a claim). The Motion asks how Oceania's processes would have revealed Huggins' unfitness. [D.E. 30 at 7–9]. Paragraph 81 answers: the site visits, in-person reviews, and audits Oceania's own program prescribes would have revealed (a) the publicly reported disrepair of the site, including the disintegrated steps whose remnants Huggins' own guide identified to the group; (b) a tour design requiring guests to descend a steep, gravel-strewn driveway on foot whenever no vehicle is staged above; and (c) an operator managing that hazard through an unwritten practice subject to ad hoc abandonment. [D.E. 27 ¶¶ 49, 65, 81].

Retention is pleaded with equal specificity: a full season of per-departure reconciliation contact, no exercise of audit rights, no corrective action, and no termination. [D.E. 27 ¶¶ 64, 83]. *Healy* denied dismissal of the same claim on materially identical retention facts — an operator required to submit a tour proposal template annually, reviews and comment cards collected from the line's crew and passengers, and the line's own inspection and monitoring of the subject tour — and applied the rule that an inspection process that should have revealed the defects "is typically sufficient" at this stage. 733 F. Supp. 3d at 1233–34.

## IV. Count I rests on established duties, not heightened ones

The Motion argues Count I imposes duties maritime law does not recognize. [D.E. 30 at 9–11].

First, the carrier's duty is reasonable care under the circumstances, *Kermarec*, 358 U.S. at 632, and the duty to warn of known, non-obvious dangers "beyond the point of debarkation in

places where passengers are invited or reasonably expected to visit," *Chaparro*, 693 F.3d at 1336, is a component of that duty, not a ceiling on it. *See Heller*, 191 F. Supp. 3d at 1357 n.4 ("While generally the duty to warn is the most relevant duty regarding off-vessel excursions, a cruise ship might have additional obligations under the 'reasonable care' standard, if, for example, there is an agency relationship between the cruise ship and the excursion operator."). The prior Order dismissed Count I for want of notice — not because the duties pleaded were unrecognized. [D.E. 23 at 6–8].

Second, independent of carrier status, one who voluntarily undertakes a safety task must perform it with reasonable care: "it is hornbook tort law that one who undertakes to warn the public of danger and thereby induces reliance must perform his 'good Samaritan' task in a careful manner." *Indian Towing Co. v. United States*, 350 U.S. 61, 64–65 (1955). Count I pleads a concrete undertaking, implemented in contract and administered in fact — mandatory operational standards, insurance vetting to Oceania's specifications, audit and inspection rights, and at-will termination, run through Oceania's Miami organization, its corporate web portal, and its vessel's Destination Manager. [D.E. 27 ¶¶ 45–46, 73–74]. Oceania likewise undertook to disclose this very tour's physical hazards — its "PLEASE NOTE" advisory — and confined them to hiking over natural terrain while omitting the driveway descent entirely. [D.E. 27 ¶¶ 27–28, 91]. Negligent performance of an assumed safety function is ordinary negligence; it asks nothing "heightened."

Third, the breach specifications in paragraph 75 are not freestanding claims, and a quarrel with the phrasing of some of them is not a ground for dismissing a count that pleads duty, breach, notice, causation, and harm. [D.E. 27 ¶¶ 72–78]. Notably, the Motion nowhere contends the hazard was open and obvious — nor could it at this stage: the loose gravel on the dark

blacktop was not reasonably appreciable from the top of the driveway, Plaintiff encountered the descent mid-tour with no alternative route to the vehicles, and no warning was given at any time. [D.E. 27 ¶¶ 53, 90–91].

**V. Count VI pleads negligent misrepresentation with particularity**

The prior Order identified the Rule 9(b) gaps: the First Amended Complaint did not allege "the precise statements at issue, who made the statements, or when they were made." [D.E. 23 at 9]. Each is now pleaded.

*What and where.* The statements are quoted verbatim from Oceania's published description of Tour GND-005 on oceaniacruises.com and in its shore excursion materials: the promise that a drive "will bring you to Morne Gazo"; the representation that "[u]pon descending, you will drive to Grand Anse Beach"; the "PLEASE NOTE" advisory confining the tour's physical hazards to hiking "over rough and uneven natural terrain"; and the "HELPFUL HINTS" footwear guidance. [D.E. 27 ¶¶ 24–28, 110]. This is the same document Oceania attaches to its Motion as Exhibit A.

*Who.* The description was authored, approved, published, and maintained by Oceania through its shoreside destination services organization. [D.E. 27 ¶ 111]. Where the alleged misrepresentation is a written statement in an identified corporate publication, the document and its corporate author supply the "who" and "where." *Ceithaml* — on which the Order relied — dismissed for want of "particularized allegations about the timing, source, and precise content of the statements": the plaintiff there did not allege when she read the website statement and could supply no details about the personnel who spoke to her. *Ceithaml v. Celebrity Cruises, Inc.*, 207 F. Supp. 3d 1345, 1353–54 (S.D. Fla. 2016); [D.E. 23 at 9–10]. A published tour description, pleaded verbatim with its source and timing, presents none of those gaps.

*When.* Plaintiff and her husband reviewed the description weeks before the voyage and before the excursion booking posted to Oceania's Guest Statement of February 10, 2025, and the description remained operative through the February 24, 2025 excursion. [D.E. 27 ¶¶ 20, 111]. The Motion's assertion that the pleaded window spans "roughly the first 61 years of Plaintiff's life" [D.E. 30 at 12] ignores paragraph 20. Rule 9(b) requires nothing more: it is satisfied by "excerpts of the exact alleged misleading statements," "the sources of the allegedly misleading statements" — there, the line's website — and "where and when Plaintiff read these statements." *Adams v. Carnival Corp.*, 482 F. Supp. 3d 1256, 1264 (S.D. Fla. 2020). Paragraphs 20, 24–28, 110, and 111 supply each.

*Falsity and materiality.* Whether "[u]pon descending, you will drive" — in a description that promised drives to and from the attraction, called the hike one "up to the top of a conical hill," and confined the disclosed hazards to natural terrain — fairly disclosed an unassisted foot descent of a steep, gravel-strewn vehicle driveway is, at minimum, a disputed reading of an ambiguous text. The Motion's dictionary exegesis [D.E. 30 at 13–14] asks the Court to construe the document against the pleader and to resolve that dispute on the merits; Rule 12(b)(6) permits neither. And the Motion's own authority sustained precisely this theory. In *Singh*, the complaint alleged that the line represented the excursion's activity level as "strenuous," a framing that directed passengers to their fitness and medical history rather than to the undisclosed hazard; the court held the claim "plausibly pled," and Count I survived. *Singh v. Royal Caribbean Cruises Ltd.*, 576 F. Supp. 3d 1166, 1182–83 (S.D. Fla. 2021). Oceania's "PLEASE NOTE" advisory framed this excursion's hazards the same way — and omitted the driveway. Materiality and inducement are pleaded: the statements were made to induce excursion purchases, and they misled Plaintiff into purchasing the excursion and into the unwarned descent. [D.E. 27 ¶¶ 113–

16]. What Oceania obtained is pleaded as well: the $228.00 charge and Oceania's margin over the operator's net price. [D.E. 27 ¶ 115].

### VI. Count IV pleads negligence based on apparent agency

*Underlying negligence.* A plaintiff proceeding on apparent agency must plead the elements of agency and the agent's underlying negligence. *Rojas*, 93 F. Supp. 3d at 1311. The Second Amended Complaint pleads Huggins' duty, its actual knowledge of the hazard, seven specified breaches — including the failure to stage a vehicle at the safe upper area in deviation from its own standing safety practice — and causation. [D.E. 27 ¶¶ 95–98]; *supra* § III.C.

*Form.* Apparent agency is a theory of liability, and the remedy the Order's own authority prescribes is repleading. [D.E. 23 at 11] (citing *Stetzenbach v. Royal Caribbean Cruises, Ltd.*, No. 18-CV-25382-UU, 2019 WL 13233574, at *2 (S.D. Fla. Mar. 1, 2019)). Count IV now pleads negligence through apparent agency, expressly framed as vicarious liability. [D.E. 27 ¶¶ 94–103].

*Elements.* Apparent agency requires a manifestation by the principal, a reasonable belief, and the claimant's reasonable action on that belief to her detriment. *Doonan v. Carnival Corp.*, 404 F. Supp. 2d 1367, 1371 (S.D. Fla. 2005); [D.E. 23 at 11]. In *Franza*, the Eleventh Circuit reversed a Rule 12(b)(6) dismissal, holding the plaintiff "plausibly alleged all of the elements of apparent agency." *Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1249 (11th Cir. 2014). The manifestations pleaded here are extensive and specific: Oceania marketed and described the excursion under its own brand and in its own voice, identifying no other entity; sold it aboard its vessel through its own destination services personnel; set the price in its sole discretion and collected payment on its own Guest Statement; issued its branded excursion ticket and mustered guests in its own lounge; held the tour out as part of its curated, vetted program;

recommended that passengers book excursions only through Oceania; and, after the incident, itself directed Plaintiff to Huggins as "the Port Agency in St. George's Grenada that will be assisting you." [D.E. 27 ¶ 99(a)–(g)]. Reliance and detriment are pleaded with equal specificity: Plaintiff, who by disposition and practice followed Oceania's book-only-through-Oceania recommendation, was never told before the excursion that any entity other than Oceania had any role. [D.E. 27 ¶¶ 22, 100–01]. This district sustains apparent-agency pleading on precisely these manifestations — branding, sale through the line's own channels and personnel, fee collection, and the book-only-through-the-line recommendation. *See Stone v. NCL (Bahamas) Ltd.*, 707 F. Supp. 3d 1302, 1314–15 (S.D. Fla. 2023); *Singh*, 576 F. Supp. 3d at 1188; *Heller*, 191 F. Supp. 3d at 1362 (correcting the defense misreading of *Gayou*, which "denied the motion to dismiss with regard to the apparent agency count").

*Disclaimers do not defeat the count at the pleading stage.* They are not properly before the Court at all: courts of this district hold that passenger-ticket disclaimers "are not central to a claim where the claim is based in tort and not in contract," and decline to consider them on a Rule 12(b)(6) motion. *Singh*, 576 F. Supp. 3d at 1187–88 (declining to consider the ticket contract and shore-excursion brochure and holding "Count VI [apparent agency] survives"); *Barham*, 556 F. Supp. 3d at 1329–30; *Kennedy*, 385 F. Supp. 3d at 1336–37 (declining to consider the shore ticket as "not central to [Plaintiff's] claim" because it is a "claim sounding in tort rather than contract"); *Reed v. Royal Caribbean Cruises Ltd.*, 618 F. Supp. 3d 1346, 1355 (S.D. Fla. 2022); *Stone*, 707 F. Supp. 3d at 1313–14; *Heller*, 191 F. Supp. 3d at 1361–62. Even if considered, the documents do not carry the Motion. *Wolf*, the Motion's lead authority [D.E. 30 at 16], arose on summary judgment, on a developed record. *Wolf v. Celebrity Cruises, Inc.*, 101 F. Supp. 3d 1298, 1301–02 (S.D. Fla. 2015), *aff'd*, 683 F. App'x 786 (11th Cir. 2017). The ticket

fine print here is pleaded to have appeared only after purchase, in small print, on a ticket delivered aboard the vessel and never signed or acknowledged — after the reliance at booking had already occurred. [D.E. 27 ¶ 102]. And labels do not control: even where a contract is properly before the court at the pleading stage, the Eleventh Circuit has declined to treat service providers as independent contractors "simply because that is what the cruise line calls them." *Franza*, 772 F.3d at 1238; *see Cantor v. Cochran*, 184 So. 2d 173, 174 (Fla. 1966) (independent-contractor "status depends not on the statements of the parties but upon all the circumstances of their dealings with each other"). Agency is "intensively factual and will almost always require discovery," and a pleaded "long-standing, profit-sharing relationship" between a cruise line and its excursion operator "allege[s] sufficient facts to permit discovery on the question of agency." *Witover v. Celebrity Cruises, Inc.*, 161 F. Supp. 3d 1139, 1150 (S.D. Fla. 2016). *Witover* reached that holding while describing the Motion's own authority, *Gayou*, as "finding that[] allegations regarding the manner in which the excursions were marketed, sold, charged and paid for through the cruise line were sufficient to withstand a motion to dismiss plaintiff's apparent agency claim." *Id.*

Finally, the website "Shore Excursion Overview" the Motion quotes [D.E. 30 at 17–18] is not before the Court. The Second Amended Complaint references Oceania's GND-005 tour description — not that separate page — so the page is neither incorporated nor central to any claim. Nor is it undisputed: the Motion quotes a webpage as it exists in 2026, with no showing that the language existed in February 2025 or that Plaintiff ever viewed it. Under the Motion's own incorporation test [D.E. 30 at 17], the document fails both requirements.

## VII. Count V pleads a joint venture theory of vicarious liability

The elements are a community of interest in a common purpose, joint control or right of control, a joint proprietary interest, a right to share profits, and a duty to share losses. *Fojtasek v. NCL (Bahamas) Ltd.*, 613 F. Supp. 2d 1351, 1357 (S.D. Fla. 2009). Count V pleads each element with the contract sections that establish it: a common purpose in selling and operating GND-005 to Vista passengers (TOA § 3); control divided by domain — Oceania over content, pricing, the exclusive sales channel, mandatory operational standards, insurance, audit, and termination, and Huggins over ground operations subject to those standards (§§ 3, 5, 13, 16, 17, 20); a joint proprietary interest in a co-developed product carried under Oceania tour codes and sold only through Oceania's channel (§§ 5(a)–(b), 20); profits shared on every ticket through the spread between the retail price Oceania sets in its sole discretion and the net price Huggins receives (§ 5(a), (d)–(e)); and losses shared through refund deductions that extinguish both parties' revenue on the ticket, with no payment to either on an unexecuted excursion (§ 5(d)). [D.E. 27 ¶¶ 35–38, 106].

These are the concrete mechanics whose absence dooms conclusory joint-venture counts; where a plaintiff pleads them, dismissal is denied. *Brown v. Carnival Corp.*, 215 F. Supp. 3d 1312, 1318–19 (S.D. Fla. 2016) (on amended allegations, finding sufficiently pleaded a common purpose, joint control or right to control, and a right to share in the profits or a duty to share in any losses, and denying dismissal of the joint-venture theory). *Accord Stone*, 707 F. Supp. 3d at 1314–15 (allegations that the line ran "arrangements, marketing, and sales of the excursion" while the operator "had control over the day-to-day working of the excursion," and that profit was "split between the two," were "plausible enough to sustain a joint venture theory of negligence liability"). The agreement's recital that the parties are not joint venturers does not

control over pleaded substance. *Cantor*, 184 So. 2d at 174; *Witover*, 161 F. Supp. 3d at 1149–50. The district is split on whether such recitals control at the pleading stage, and the better-reasoned line holds they do not: "[a] joint venture, like a partnership, can be created by express or implied contract," and "while the Tour Operator Agreement specifically states that it does not constitute a joint venture, a subsequent course of conduct may have created such a joint venture agreement." *Stone*, 707 F. Supp. 3d at 1313 (quoting *Pucci v. Carnival Corp.*, 146 F. Supp. 3d 1281, 1292 (S.D. Fla. 2015)) (recognizing the split); *see Heller*, 191 F. Supp. 3d at 1363 & n.15 (declining to consider the operator agreement). *Singh* and *Zapata*, the Motion's authorities, sit on the other side of that split. And the clause the Motion quotes recites the operator's relationship "with Norwegian" [D.E. 30 at 19–20], under an agreement executed by NCL Corporation Ltd. as agent [D.E. 27 ¶ 30]; what that clause means and how it applies to Oceania are questions of construction on a record, not grounds for dismissal. Finally, this Court dismissed the prior joint-venture count because no underlying negligence claim survived, citing authority that such allegations are "sufficient to state a claim for joint venture so long as Plaintiff adequately repleads the negligence claim." [D.E. 23 at 11–12] (quoting *Lapidus v. NCL Am. LLC*, No. 12-21183-CIV, 2012 WL 2193055, at *6 (S.D. Fla. June 14, 2012)). The negligence claims are now adequately repleaded. *Supra* §§ III, VI.

**VIII. In the alternative, leave to amend**

Should the Court identify any remaining deficiency in any count, Plaintiff respectfully requests leave to amend under Rule 15(a)(2), which is freely given when justice so requires. Any further particulars — audit records, Manual provisions, the operator's departure history — lie in Oceania's possession, and Plaintiff has cured, at each opportunity, each deficiency this Court has identified. Dismissal with prejudice would be unwarranted.

## IX. Conclusion

The Court told Plaintiff what a sufficient complaint would allege. Plaintiff alleged it, and more. The Motion should be denied in its entirety.

WHEREFORE, Plaintiff, KATHERINE RHOADES, respectfully requests that the Court deny Defendant's Motion to Dismiss [D.E. 30] in its entirety and direct Defendant to answer the Second Amended Complaint [D.E. 27]; in the alternative, Plaintiff requests leave to amend, together with such other relief as the Court deems just.

Respectfully submitted,

/s/ Michael A. Hoffman
Michael A. Hoffman (Florida Bar Number: 89549)
Attorney E-mail address:
MAHoffman@1800AskFree.com
David W. Singer & Associates, P.A.
1011 S. Federal Highway
Hollywood, Florida 33020
Telephone: (954) 920-1571
Cell: (954) 665-5290
*Attorneys for Plaintiff Katherine Rhoades*