UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 26-cv-21046-DSL

KATHERINE RHOADES,

Plaintiff,

v.

OCEANIA CRUISES LTD., a Bermuda Company,
d/b/a OCEANIA CRUISES,

Defendant.
_________________________________/

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Defendant, OCEANIA CRUISES LTD. ("Oceania" or "Defendant"), files its Reply in Support of its Motion to Dismiss Plaintiff's Second Amended Complaint [D.E. 27]:

**I. Plaintiff's Second Amended Complaint Should be Dismissed in its Entirety as Plaintiff Fails to Sufficiently Allege Notice**

In its Order granting Oceania's Motion to Dismiss Plaintiff's Amended Complaint, this Court found that Plaintiff failed to apply "a high-level safety policy to the particular Excursion at issue here, let alone to the particular 'risk-creating condition.'" [D.E. 23, at p. 7]. Once again, Plaintiff has failed to carry this burden. In her Response, Plaintiff repeatedly cites insurance, termination, and purported audit and inspection provisions in the Shore Excursion Agreement ("Agreement") between Oceania and Huggins but fails to explain how they are specifically tailored to "identify, measure, and mitigate" the alleged safety risk of the alleged loose gravel and stones at the blacktop access driveway. [D.E. 27, ¶ 44-45]. Plaintiff argues that Oceania conducted or must have conducted "at least one audit, in-person review, or site inspection of the tour" before Plaintiff's alleged incident, and that such review "would have revealed the risk-creating

condition." [D.E. 34, at p. 1-2]. However, Plaintiff fails to respond to Oceania's argument that the inspection provision *clearly* and *unequivocally* refers only to the inspection and audit of *books* and *records*.

> 17. Right to Inspect: Norwegian or its designated representative shall be entitled to **inspect, audit and copy Operator's books and records** relating to Shore Excursions at any time during regular business hours, upon reasonable notice, in order to verify Operator's compliance with this Agreement.

*See* [D.E. 12-4] (emphasis added). Plaintiff fails to explain how Oceania being entitled to inspect books and records would have revealed the alleged dangerous condition (loose gravel and stones at the blacktop access driveway) in this case. This Court may consider the Agreement because it is central to Plaintiff's claims and undisputed in that Plaintiff cannot honestly challenge its authenticity. Plaintiff repeatedly cites this specific inspection provision throughout her Second Amended Complaint to support her claim that Oceania allegedly maintained a "vetting, audit, and in-person review program" and therefore should have been on notice of the alleged dangerous condition. [D.E. 27, ¶¶ 41, 45, 83, 106(b)]; [D.E. 34, p. 3]. Plaintiff claims that the Agreement cannot be considered but fails to respond to Oceania's argument that Plaintiff repeatedly references and relies upon the Agreement in her Second Amended Complaint. [D.E. 30, p. 17].

In addition to failing on the merits, because Plaintiff fails to respond to Oceania's argument that a right to inspect books and records would not reveal the alleged dangerous condition, her argument that Oceania had notice of the alleged deteriorating blacktop driveway should be considered abandoned. *See* [D.E. 23, at p. 10] (this Court ruled that failing to respond to an argument constitutes abandonment); *see also Med-Stop, Inc. v. Vandutch, Inc.,* No. 23-CV-21875, 2025 WL 26731, at *3 (S.D. Fla. Jan. 3, 2025) (quoting *Hamilton v. Southland Christian Sch., Inc.,* 680 F.3d 1316, 1319 (11th Cir. 2012)) ("[T]he Eleventh Circuit has repeatedly held [that]

'the failure to make arguments and cite authorities in support of an issue waives it.'"); *see also In re Egidi,* 571 F.3d 1156, 1163 (11th Cir. 2009)).

Plaintiff also argues that an allegation "that a cruise line has an inspection process for excursion operators that should have revealed the [alleged defects] but did not" is sufficient to withstand a motion to dismiss. [D.E. 34, at p. 4]. Plaintiff cites *Healy*, *Blow*, *Kennedy*, and *Heller* for support, all of which are easily distinguishable, as these plaintiffs made sufficient allegations showing that the defendants knew or should have known about the alleged dangerous condition *before* the subject incidents and maintained procedures that were narrowly tailored to identifying the alleged dangerous condition at issue. *Healy v. NCL (Bahamas) Ltd.*, 733 F. Supp. 3d 1227, 1232–33 (S.D. Fla. 2024) (Notice alleged where crewmembers "participated in [the] Subject Tour prior to April 6, 2022", "collected information about the ATV excursion as part of an annual bid process", and devoted an entire department to supervising and monitoring shore excursions"); *Blow v. Carnival Corp.*, No. 22-22587, [D.E. 30, ¶¶ 53-55] (S.D. Fla. Feb. 15, 2023) (Plaintiff alleged in complaint prior snorkeling incidents and Carnival's procedures requiring meeting before every port of call to discuss hazardous conditions and monitor weather and sea conditions to determine excursion safety); *Kennedy v. Carnival Corp.*, No. 18-20829, [D.E. 38, ¶¶ 22-25) (S.D. Fla. Aug. 21, 2018) (Plaintiff alleged in complaint prior incidents of injuries from diving in shallow waters; defendant had policies and warnings regarding jumping into shallow waters and dangers of floating inflatables; and crewmembers were trained in these areas and had visited the island numerous times); *Heller v. Carnival Corp.*, 191 F. Supp. 3d 1352, at 1355-58 (S.D. Fla. 2016) (Plaintiff alleged in complaint that Carnival had investigated the Segway excursion and previously told plaintiff Segways were safe, easy to operate, and would pose no safety issues.).

Unlike these four cases, Plaintiff here has failed to allege any prior incidents for the subject excursion and as discussed above, fails to explain how the right to inspect books and records would have revealed to Oceania the alleged dangerous condition of loose gravel and stones at the blacktop access driveway. In addition, unlike these cases Plaintiff cites, Plaintiff fails to allege any information about what Oceania knew *prior* to her alleged incident. Plaintiff makes numerous vague references to public reports of the "site's disrepair" but fails to provide any facts as to what this refers to or how Oceania was allegedly aware of this information before Plaintiff's alleged incident. *Id.* at p. 2, 7. Plaintiff also cites the tour guide's purported statements made *after* Plaintiffs alleged incident, which do not impute notice of the alleged dangerous condition to Oceania before her incident. *Id.* at p. 6.

To the extent that Plaintiff attempts to distinguish *Newbauer* and *Holland* for involving transitory substances [D.E. 34, at p. 5], both cases have been cited approvingly by courts when discussing the issue of notice for incidents that occurred on shore excursions. *See Benson v. Carnival Corp.*, No. 23-23408-CIV, 2024 WL 964235, at *3 (S.D. Fla. Mar. 6, 2024) (*Holland* cited by court to discuss notice for bus excursion); *Ajwani v. Carnival Corp.*, 722 F. Supp. 3d 1333, 1338 (S.D. Fla. 2024) (*Holland* and *Newbauer* cited by court to discuss notice for wildlife river excursion); *Ryan, v. NCL (Bahamas) Ltd.*, No. 26-CV-21856, 2026 WL 2322640, at *4 (S.D. Fla. July 28, 2026) (*Newbauer* cited by court to discuss notice for ATV excursion).

Plaintiff also fails to sufficiently respond to *Polanco*, *Aronson*, *Ryan*, and *Bollinger* as cited in Oceania's Motion, as Plaintiff claims they are inapplicable because they did not include a "contractually mandated inspection program" for "a fixed physical condition." [D.E. 34, at p. 6]. These cases are directly on point and support Oceania's position, as the subject inspection provision in the Agreement only gives Oceania a right to inspect Huggins' books and records.

Additionally, Plaintiff's argument that the alleged dangerous condition was "fixed and permanent" is false, as Plaintiff repeatedly refers to the dangerous condition as "loose gravel and stones" that were "shedding" from the top of a "deteriorating blacktop surface". [D.E. 27, ¶¶ 48, 60]; [D.E. 34, at p. 2 and 5]. The classification of "shedding" and "deteriorating" as transitive verbs rebut any allegation that this alleged condition was fixed and permanent. MERRIAM WEBSTER'S ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/shedding; https://www.merriam-webster.com/dictionary/deteriorating (last visited September 3, 2026). As such, Plaintiff's allegation that the blacktop was shedding and deteriorating "continuously for months or years" is insufficient on its face to argue that this alleged dangerous condition was present during any alleged inspection by Oceania. [D.E. 27, ¶ 60]; [D.E. 34, at p. 5]. By failing to allege *any* prior incidents or complaints, Plaintiff does not show how this blacktop would have been thought of as dangerous to Oceania or Huggins. As a result, plaintiff fails to allege notice.

## II. Plaintiff's Second Amended Complaint Seeks to Impose Heightened Duties of Care on Oceania

Oceania's duty to its passengers, beyond the port, is limited to *only* warning of dangers that it knew or should have known, and which are not of an open and obvious nature. *See Thompson v. Carnival Corp.*, 174 F. Supp. 3d 1327, 1340 (S.D. Fla. 2016) ("Once the passenger leaves the ship, a cruise ship operator only owes its passengers a duty to warn of known dangers in places where passengers are invited or reasonably expected to visit."); *Gayou v. Celebrity Cruises, Inc.*, 2012 WL 2049431, at *5 (S.D. Fla. June 5, 2012) ("A cruise line must warn passengers only of those dangers that the cruise line knows or reasonably should have known, and which are not apparent and obvious to the passenger.").

As mentioned above and in Oceania's Motion [D.E 30], Plaintiff has not alleged sufficient facts that Oceania knew or should have known of the alleged dangerous condition and how this

would have been revealed through Oceania's alleged inspection of Huggins' books and records. [D.E. 27]. As a result, all of Plaintiff's allegations regarding duties that Oceania purportedly violated are inapplicable to Oceania, as Plaintiff imposes responsibilities that go beyond Oceania's sole duty to *only* warn of dangers that it knew or should have known, and which are not open and obvious. [D.E. 27, ¶ 75]. Plaintiff's allegations are a *clear* and *unequivocal* attempt to impose heightened duties of care on Oceania that are not contemplated or supported by Eleventh Circuit precedent or federal maritime law. *Id.*; *see also Wynn v. Carnival Corp.* 2026 WL 914201, at *2 (S.D. Fla. Mar. 30, 2026) (finding that Plaintiff's allegations attempted to impose an incorrect heightened duty of care on Carnival, including the duty to ensure a safe excursion).

Plaintiff also fails to cite legal authority supporting that heightened duties may be imposed on Oceania by a third party through a shore excursion agreement executed between a cruise line and a shore excursion operator. Moreover, Section 27 of the Agreement expressly states that it "does not provide third parties with any remedy, claim, or right of action." *See* [D.E. 12-4]. As such, Plaintiff's Second Amended Complaint should be dismissed in its entirety.

**III. Plaintiff's Negligent Misrepresentation Claim (Count VI) Should be Dismissed**

To assert a claim for negligent misrepresentation, a plaintiff must satisfy the heightened pleading standard of Rule 9(b) by setting forth particular allegations about the "who, what, when, where, and how" of the fraud. *See Ceithaml v. Celebrity Cruises, Inc.*, 207 F. Supp. 3d 1345, 1353 (S.D. Fla. 2016). Plaintiff fails to satisfy this heightened pleading standard that is required by Rule 9(b).

In her Response, Plaintiff again argues that the "who" is Oceania, which was already found by this Court to be insufficient in its initial Order granting Oceania's Motion to Dismiss Plaintiff's Amended Complaint. [D.E. 23, at p. 9]. Plaintiff has failed to rectify this deficient allegation, and her negligent misrepresentation claim should be dismissed for this reason alone.

Furthermore, Plaintiff argues that the "when" has been satisfied by Paragraph 20 of her Second Amended Complaint, where she alleges that she reviewed the excursion description "weeks before the voyage." [D.E. 27, ¶ 20]. This overbroad time period could refer to any time prior to the voyage. This is less precise than in *Gayou*, where the court found that alleging false statements were made "[d]uring the cruise," "[p]rior to arriving at each destination," or when Gayou "visited the excursion desk does not satisfy Rule 9(b)." *Gayou v. Celebrity Cruises, Inc.*, No. 11-23359-CIV, 2012 WL 2049431, at *7 (S.D. Fla. June 5, 2012). Plaintiff must be more precise temporally. Plaintiff additionally fails to sufficiently identify "where" the statement was made, as her claim that it was made on "oceaniacruises.com and in its shore excursion materials" lacks specificity. [D.E. 34, page 9]. In addition, Plaintiff cites no legal support for her argument that an "identified corporate publication" satisfies the "where" requirement under *Ceithaml*. *See Appleby v. Knauf Gips KG*, No. 22-CIV-61411-, 2023 WL 2401800, at *5 (S.D. Fla. Mar. 8, 2023) (Plaintiff fails to allege the "where" prong when plaintiff identified the "Defendants' distributed 'marketing material[.]'").

Plaintiff also failed to respond to Oceania's argument that she did not allege that if not for these alleged misrepresentations, she would not have purchased the subject excursion. [D.E. 27, ¶¶ 110, 114]. Plaintiff also fails to explain how the alleged failure to disclose that Plaintiff would need to "descend on foot" on "steep gravel-strewn blacktop" is a material misrepresentation for an activity that was expressly advertised as a hike over "rough and uneven" terrain. [D.E. 27, ¶¶ 51, 110 (b)], [D.E. 30-1]. For failing to allege materiality, Plaintiff's negligent misrepresentation claim must be dismissed. [D.E. 30]. Plaintiff's reliance on *Singh* is also misplaced, as Plaintiff herself admits that *Singh* concerned a representation regarding "fitness and medical history" while Oceania expressly warned of the excursion's uneven terrain. [D.E. 34, p. 10].

## IV. Count IV Fails to Establish Apparent Agency

Contrary to Plaintiff's argument, Plaintiff has failed to sufficiently plead the underlying negligence of Oceania or Huggins. In her Response, Plaintiff relies on *Franza* [D.E. 34, page 11], but *Franza* involved medical negligence aboard the cruise ship and did not involve an excursion. *Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1249 (11th Cir. 2014). As a result, *Franza* is not instructive as to the underlying negligence of a tour operator or of a cruise line's purported duties *beyond* the port. *Id.* In addition, *Franza* involved facts that overwhelmingly supported the plaintiff's view that the ship's doctors could act on defendant Carnival's behalf, as the employees wore uniforms with Carnival's logo, worked in a Carnival-branded medical center with equipment and supplies bought by Carnival, and were introduced by crewmembers as "the ship's Officers." *Id.* at 1237-38. Plaintiff fails to allege any specific facts supporting that the excursion operator (or Oceania) had notice of the alleged dangerous condition prior to Plaintiff's alleged incident, which is a requisite element under federal maritime law. *See Pizzino v. NCL (Bahamas) Ltd.,* 709 Fed.App'x 563, 565 (11th Cir. 2017) (holding that a plaintiff needs to demonstrate that a cruise line had actual or constructive notice of the dangerous condition to establish a claim for negligence). Plaintiff cites the tour guide's purported statements made *after* Plaintiffs alleged incident, which do not impute notice of the alleged dangerous condition to Oceania or Huggins before her incident. [D.E. 34, at p. 6]. *See Moseley v. Carnival Corp.,* 593 Fed.Appx. 890, 893 (11th Cir. 2014) ("Without any factual allegations to support this critical element, [the] complaint raises no more than a 'mere possibility of misconduct,' which is insufficient ... to withstand a motion to dismiss.").

Furthermore, despite Plaintiff's argument that disclaimers cannot be considered because her "claim is based in tort and not in contract," Plaintiff expressly references and relies upon her

excursion ticket and Oceania's website to allege apparent agency in the Second Amended Complaint, claiming that Oceania "issued its branded excursion ticket" to manifest a reasonable belief of agency. [D.E. 27, ¶ ¶ 99(d); 100; 102]; [D.E. 34, at p. 11-12]. *See Gayou v. Celebrity Cruises, Inc*., 2012 WL 2049431, at *9 ("[The] Eleventh Circuit has [stated,] 'where the plaintiff refers to certain documents in the complaint and [they] are central to the plaintiff's claim, then the Court may consider the documents [ ] for purposes of Rule 12(b)(6) dismissal...'").

Plaintiff's argument that the Court cannot consider Oceania's website should fail for similar reasons, as she fails to respond to Oceania's argument that Plaintiff alleged to going on the subject shore excursion in part because of Oceania's promotion and publication of excursions on its website and its "shore excursion materials" prior to her cruise, which is central to her claims. [D.E. 27, ¶¶ 23, 29, 110(a)]. Pursuant to the disclaimers in her shore excursion ticket and on Oceania's website that all shore excursion providers were independent contractors, Plaintiff cannot allege in good faith that she reasonably believed the shore excursion operator, Huggins, was an agent of Oceania, a necessary element of an apparent agency claim. [D.E. 12-3] *See* Oceania Cruises, *Shore Excursion Overview,* (emphasis added), available at: https://brochures.oceaniacruises.com/shore-excursions-overview/19/; *see also Wolf v. Celebrity Cruises, Inc.*, 101 F. Supp. 3d 1298, 1309 (S.D. Fla. 2015), aff'd, 683 F. App'x 786 (11th Cir. 2017) (the court differentiates from *Franza*, finding that plaintiff could not reasonably allege apparent agency when he was given three disclaimers that the offshore tour excursion operators were independent contractors and not agents or representatives of [the cruise line].)

Plaintiff's dispute with the website page's authenticity is equally unavailing. Plaintiff has not argued that the website page did not contain this information nor has she provided any basis for disputing the website page's contents. [D.E. 34 at p. 13]. Plaintiff's dispute with the website

page's authenticity without any basis for challenging its contents is insufficient to preclude the Court from considering it on a motion to dismiss. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (court held that dealership contract can be considered when central to Plaintiff's complaint and its contents are not challenged.). As a result, Plaintiff's argument that these documents cannot be considered at this stage of the proceeding should fail.

**V. Plaintiff's Joint Venture Claim (Count V) Should be Dismissed**

Claims for joint venture are regularly dismissed where the subject excursion contract unequivocally expresses that there was no intent to create a joint venture. *See Singh v. Royal Caribbean Cruises Ltd.,* No. 20-24987-CIV, 2021 WL 6884873, at *14 (S.D. Fla. Dec. 10, 2021). Plaintiff attempts to dismiss the Agreement's express disclaimer by arguing that a "subsequent course of conduct may have created such a joint venture agreement", but this misstates the law. [D.E. 27, ¶ 106]; [D.E. 34, at p. 15]. When presented with an express disclaimer of a joint venture, courts have only upheld joint venture claims on a motion to dismiss if "as alleged, the cruise line and the tour operator could have formed the joint venture implicitly through a *separate* agreement." *Woodley v. Royal Caribbean Cruises, Ltd.*, 472 F. Supp. 3d 1194, 1209 (S.D. Fla. 2020) (citing *Pucci v. Carnival Corp.*, 146 F. Supp. 3d 1281, 1292 (S.D. Fla. 2015)).

Plaintiff's joint venture claim here, like the plaintiff in *Woodley*, expressly "originate[s] *from* the document", where the court in *Woodley* found that the disclaimer was effective to dismiss plaintiff's claim for joint venture. *Id.* Plaintiff repeatedly refers to the Agreement to allege joint venture and fails to allege a separate agreement between Oceania and Huggins that could show a joint venture between the two. [D.E. 27, ¶ 106(a)-(e)].

Plaintiff's reliance on *Stone*, *Heller*, *Brown*, and *Cantor* are also misplaced, as these cases did not consider express disclaimers of a joint venture. *Stone v. NCL (Bahamas) Ltd.*, 707 F. Supp.

3d 1302, 1314–15 (S.D. Fla. 2023) (Defendant failed to properly refer to the disclaimer); *Heller v. Carnival Corp.*, 191 F. Supp. 3d 1352, 1358 (S.D. Fla. 2016) (Defendant failed to properly attach the disclaimer); *Brown v. Carnival Corp.*, 215 F. Supp. 3d 1312, 1318–19 (S.D. Fla. 2016) (Defendant alleged no disclaimer); *Cantor v. Cochran*, 184 So. 2d 173, 174 (Fla. 1966) (same). *Witover v. Celebrity Cruises, Inc.*, 161 F. Supp. 3d 1139, 1150 (S.D. Fla. 2016) is even less helpful for Plaintiff, as the plaintiff there did not allege a joint venture claim.

Respectfully submitted,

**FOREMAN FRIEDMAN, P.A.**

By: ***/s/ Michael C. Gordon***
Jeffrey E. Foreman, Esq. (FBN 240310)
Florida Bar No. 0240310
jforeman@fflegal.com
Michael C. Gordon, Esq.
Florida Bar No. 149284
mgordon@fflegal.com
Charles T. Perez, Esq.
Florida Bar No. 1068712
cperez@fflegal.com
One Biscayne Tower, Suite 2630
2 South Biscayne Boulevard
Miami, FL 33131
Tel: 305-358-6555/Fax: 305-374-9077
*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that the foregoing was electronically filed with the Clerk of the Court via CM/ECF on September 8, 2026. We also certify that the foregoing was served on all counsel or parties of record on the attached Service List either via transmission of Notices of

Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Filing.

By: ***/s/ Michael C. Gordon***
Michael C. Gordon, Esq.

**SERVICE LIST**

David W. Singer, Esq.
dsingeresq@aol.com
Michael A. Hoffman, Esq.
MAHoffman@1800askfree.com
litigation@1800askfree.com
ndvorak@1800askfree.com
DAVID W. SINGER & ASSOCIATES, PA
1011 South Federal Highway
Hollywood, FL 33020
954-920-1571
*Attorneys for Plaintiff*

Jeffrey E. Foreman, Esq.
jforeman@fflegal.com
kfehr@fflegal.com
Michael C. Gordon, Esq.
mgordon@fflegal.com
drobinson@fflegal.com
gkalimullina@fflegal.com
Charles T. Perez, Esq.
cperez@fflegal.com
FOREMAN FRIEDMAN, PA
One Biscayne Tower, Suite 2630
2 South Biscayne Boulevard
Miami, FL 33131
Phone: 305-358-6555
Fax: 305-374-9077
*Attorneys for Defendant*